

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Geo. W. Cox
State Health Officer
Texas State Board of Health
Austin, Texas

Dear Sir:                          Opinion No. O-7105

                    Re: Whether the use of saccharin
                        in soda water constitutes
                        adulteration under Article
                        707, V. A. P. S., and the
                        validity of the order of the
                        State Health Officer and State
                        Board of Health.

        This acknowledges receipt of your letter, which reads
as follows:

        "On June 10, 1946, at a regular meeting of the
    State Board of Health, attended by the State Health
    Officer, upon motion duly made and seconded, said
    Board (a quorum being present) unanimously adopted
    certain definitions and standards for food and drug
    products to implement the enforcement of the Texas
    Food and Drug Laws. Such action was taken at the
    suggestion of the State Health Officer and after
    full discussion by said Board. Pursuant thereto
    and by virtue of the authority vested in the State
    Health Officer by Articles 4465A and 4466, of the
    Revised Civil Statutes of Texas, said State Health
    Officer made and adopted said definitions and stan-
    dards so unanimously adopted and recommended by said
    Board. Among said definitions and standards so
    adopted by said Board and made and adopted by said
    State Health Officer were the following:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Geo. W. Cox, page 2

"'Mayonnaise Dressing

"'Mayonnaise, Mayonnaise Dressing, Mayonnaise Salad
Dressing. The semisolid emulsion of edible vegetable
oil, egg yolk, or whole egg, a vinegar, and/or lemon
juice, with one or more of the following: Salt,
other seasoning commonly used in its preparation,
sugar, and/or dextrose. The finished product contains
not less than 50 per cent of edible vegetable oil.

"'Non-Nutritive Mineral Oil

"'The use of mineral oil as an ingredient in foods is
hereby prohibited. Any food product containing mineral
oil as an ingredient will be considered adulterated
under the Texas Food and Drug Law regardless of the form
of label employed.'

"'BEVERAGES
"'A. Carbonated Beverages, Soda, Soda Water

"'The term 'carbonated beverage', 'soda', or 'soda
water', as used in this definition shall include all
beverages prepared from sugar syrup or sugar and dex-
trose syrup, soda water flavor, and potable carbonated
water, with or without harmless color, and with or
without acidulation by the use of harmless organic
acids, or pure phosphoric acid.

"'The use of saccharin as an ingredient in carbonated
beverages, soda, soda water, and other soft drinks is
hereby prohibited. Any carbonated beverage, soda,
soda water, or soft drink containing saccharin will be
considered as adulterated under the Texas Food and Drug
Law.'

"By reason of such action you are respectfully requested
to advise the State Health Officer

"(a). Whether any food product containing mineral oil as
an ingredient will be considered as adulterated under Chapter 3,
Title 71, of the Revised Civil Statutes of Texas.

Honorable Geo. W. Cox,   page 3

"(b).   Whether a person, firm or corporation who shall, within this State, manufacture for sale, have in his possession with intent to sell, or offer or expose for sale or sell or exchange any article of food containing mineral oil as an ingredient will be deemed to have violated, and be subject to prosecution under Articles 706, 707 and 717 of the Penal Code of the State of Texas.

"(c).   Whether any carbonated beverage, soda, soda water or other soft drink containing saccharin will be considered as adulterated under Chapter 3, Title 71, of the  Revised Civil Statutes of Texas, and

"(d).   Whether a person, firm or corporation who shall, within this State, manufacture for sale, have in his possession with intent to sell, or offer or expose for sale, or sell or exchange any carbonated beverage, soda, soda water or other soft drink containing saccharin will be deemed to have violated, and be subject to prosecution under Articles 706, 707 and 717 of the Penal Code of Texas.

"In connection with the question contained in paragraph (d) above, your attention is invited to Attorney General's Opinion No. O-6589, dated 1945, and you are respectfully requested to advise whether said opinion is any longer authoritative by reason of the promulgation of the foregoing definition and standard, having the force of law, fixing a standard for sweetness of soda water and prohibiting the use of saccharin as an ingredient in its composition."

In view of the fact that questions (a) and (b) are at present the subject of litigation, we do not pass upon them here.

Title 71, Chapter 3, Vernon's Annotated Civil Statutes, deals with Food and Drugs.  Article 4466, Sections 2 and 3 of that chapter, provide in part:

"The State Health Officer shall:

"2.   Make, publish and enforce rules consistent with this law, and adopt standards for foods, food products, beverages, drugs, etc., and the modern methods of analysis authorized as official by the Federal Department of Agriculture.

"3.   Inquire into the quality of the foods and drug products manufactured or sold or exposed for sale in this State. . ."

Honorable Geo. W. Cox,   page 4

Article 4471 of that chapter and Article 706, V. A. P. C., provide that "the term 'food' shall include all articles used by man for food, drink, flavoring, confectionery or condiment whether simple, mixed or compounded". Soda water, then, is classified as food within the meaning of these two articles. Article 4472 of Title 71, Chapter 3, specifically adopts the Penal Code definition of adulteration of food as set forth in Article 707.

The original act defining adulteration of food in Texas was passed by the 30th Legislature in 1907 by House Bill No. 5, Chapter 39, page 62, General Laws of Texas. It became effective in June, 1907, and provided as follows:

"In the case of food:   First.   If any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength.

"Second.   If any substance has been substituted wholly or in part for the article.

"Third.   If any valuable constituent of the article has been wholly or in part abstracted.

"Fourth.   If it be mixed, colored, powdered, coated, or stained in a manner whereby damage or inferiority is concealed.

"Fifth.   If it contain any added poisonous or other added deleterious ingredient which may render such article injurious to health; provided, that when in the preparation of food products for shipment they are preserved by any external application applied in such manner that the preservative is necessarily removed mechanically, or by maceration in water or otherwise, and directions for the removal of said preservative shall be printed on the covering of the packages. The provisions of this act shall be construed as applying only when said products are ready for consumption.

"Sixth.   If it consists in whole or in part of a filthy, decomposed or putrid animal or vegetable substance, or any portion of an animal unfit for food, whether manufactured or not, or if it is the product of a diseased animal, or one that has died otherwise than by slaughter."

Honorable Geo. W. Cox,   page 5

A Federal enactment, 21 U. S. C. A. 78, Section 8, passed in June, 1906, repealed in 1938, reads as follows:

"Food.   In the case of food:

"Injurious mixtures.- First.   If any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength.

"Substitutes.- Second.   If any substance has been substituted wholly or in part for the article.

"Valuable constituents abstracted.- Third.   If any valuable constituent of the article has been wholly or in part abstracted.

"Damage or inferiority concealed.   Fourth.   If it be mixed, colored, powdered, coated, or stained in a manner whereby damage or inferiority is concealed.

"Deleterious ingredients; preservatives in shipment conditionally excepted.   Fifth.   If it contain any added poisonous or other added deleterious ingredient which may render such article injurious to health.   When in the preparation of food products for shipment they are preserved by any external application applied in such manner that the preservative is necessarily removed mechanically, or by maceration in water, or otherwise, and directions for the removal of said preservative shall be printed on the covering or the package, the provisions of sections 1 to 15, inclusive, of this title shall be construed as applying only when said products are ready for consumption.

"Animal or vegetable substances unfit for food; products of animals diseased or having died otherwise than by slaughter. - Sixth.   If it consists in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance, or any portion of an animal unfit for food, whether manufactured or not, or if it is the product of a diseased animal, or one that has died otherwise than by slaughter."

This statute was apparently the basis for the Texas statute, for the wording of each as to what constitutes adulteration of food is identical, except that the Texas statute added the words "provided that" at the beginning of the second sentence of section 5.   We note that the only change to the original Texas act was made by the 31st Legislature in H. B. 26, Chapter 94, page 166, General Laws of Texas, which added to Section 3 "or if the product be below that standard of quality, strength, or purity represented to the purchaser or consumer."   Since that time there has been no

Honorable Geo. W. Cox,   page 6

change in the adulteration of food statute, now Article 707.

Since the language of both Federal and Texas statutes are identical, and since the Federal act was apparently the basis for the Texas act, we may look to the construction placed upon the Federal enactment as an aid in determining the proper construction of the Texas statute. 39 Tex. Jur. 264, section 140. We find no case law dealing with saccharin under the Federal or Texas acts. However, the Federal administrative authorities consistently decided that the use of saccharin in food constituted adulteration under the Federal statute, basing their conclusions on certain findings. We note the following Food Inspection Decisions of the Department of Agriculture:

Food Inspection Decision 142, issued February 29, 1912, reads in part:

"After full consideration of the representations made in behalf of the manufacturers of saccharin at the hearing before us and of the briefs filed by their attorneys, as well as the briefs filed, at our request, by officers of the Department of Agriculture, we conclude that the use of saccharin in normal foods, within the jurisdiction of the Food and Drugs Act, is a violation of law and will be prosecuted.

"It is true that the Referee Board did not find that the use in foods of saccharin in small quantities (up to 0.3 gram daily) is injurious to health. However, the Referee Board did find that saccharin used in quantities over 0.3 gram per day for a considerable period is liable to disturb digestion, and the Food and Drugs Act provides that articles of food are adulterated which contain any added poisonous or other added deleterious ingredient which may render them injurious to health.

"The Bureau of Chemistry of the Department of Agriculture reports that saccharin has been found in more than fifty kinds of foods in common use. It is argued, therefore, that if the use of saccharin in foods be allowed, the consumer may very easily ingest, day by day, over 0.3 gram, the quantity which, according to the findings of the Referee Board, is liable to produce disturbances of digestion. On the other hand, it is claimed by the manufacturers that the sweetening power of saccharin is so great that, in a normal dietary, the amount of saccharin

Honorable Geo. W. Cox, page 7

ingested daily would not exceed 0.3 gram, the amount found to be harmless by the Referee Board.

"However, this may be, it is plain, from the finding of the Referee Board, that the substitution of saccharin for sugar lowers the quality of the food. The only use of saccharin in foods is as a sweetener, and when it is so used, it inevitably displaces the sugar of an equivalent sweetening power. Sugar has a food value and saccharin has none. It appears, therefore, that normal foods sweetened with saccharin are adulterated under the law."

To the same effect, see Food Inspection Decision 135, issued 1911, and Food Inspection Decision 146, issued 1912.

We quote from a letter, dated July 12, 1946, to this department from the Texas State Health Officer:

"The Texas State Board of Health and the State Health Officer being fully aware of the general opinion as expressed in scientific literature regarding the use of saccharin as a substitute for sugar in food products felt that the indiscriminate use of saccharin could be deleterious to health, and recognizing their responsibility in the general health and welfare of the citizens of this State, adopted the regulation prohibiting the use of saccharin as a substitute for sugar in food products."

By virtue of Article 4466, sections 2 and 3, the State Health Officer and State Board of Health have the authority to make such a regulation, and it does not appear on its face that such regulation is unreasonable, arbitrary, or capricious.

In view of the foregoing, it is the opinion of this department that:

(1) the use of saccharin in soda water constitutes adulteration within the meaning of Article 707, by virtue of the standard fixed by the State Health Officer and Board, and that

(2) the order of the State Board of Health is valid.

We trust that this fully answers your questions.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Richard H. Cocke
Assistant

By William E. Stapp

WES:LJ

APPROVED JUL 20 1948

FIRST ASSISTANT
ATTORNEY GENERAL


APPROVED
OPINION COMMITTEE
BY [illegible] CHAIRMAN